IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

                                      Nos.    1:17-cv-01255-MV-KRS

v.                                                     1:99-cr-00571-MV-KRS-1

KEITH HOPSKIN,

        Defendant/Movant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

      Keith Hopskin, an inmate confined at FCI Elkton in Ohio, seeks review under 28 U.S.C. § 2255 of a judgment revoking his supervised release related to a 1999 drug conviction. (Doc. 61).[1] Given the age of the underlying conviction, Hopskin asserts his attorney was ineffective for (1) not raising a jurisdictional challenge; and (2) failing to file an appeal as Hopskin directed. Pursuant to an order of reference, *see* 28 U.S.C. § 636; (Doc. 65), the Court has considered the parties' submissions and the record. Having done so, the Court **RECOMMENDS** that Hopskin's motion be denied as to the first allegation of ineffective assistance, Hopskin be appointed counsel, and an evidentiary hearing be held as to the second basis for relief.

**BACKGROUND**

      On October 18, 1999, Hopskin pleaded guilty in this Court to a single-count indictment charging him with possession with the intent to distribute 500 grams of cocaine. *See* 21 U.S.C. § 841(b)(1)(B); (Docs. 30 &31). He subsequently was sentenced to thirty months in federal prison and a four-year term of supervised release "upon release from imprisonment." (Doc. 38).

---

[1] The docket number or "Doc" refers to the entries on the docket in the criminal case, 1:99-cr-00571-MV-KRS-1

Hopskin commenced his sentence on March 13, 2000 and in May of that year was transferred to FCI Milan. (Doc. 61).

While serving this sentence, Hopskin was extradited to Kent County, Michigan to answer for a second-degree murder charge. (*Id.*). He pleaded guilty and was sentenced in August 2001 to an indeterminate term of incarceration between twelve and thirty-seven years. (*Id.*). Hopskin says that he received discharge notice from the Federal Bureau of Prisons during his time at the Kent County jail. In September 2001, Hopskin began his sentence on the state conviction. (*Id.*). On December 5, 2012, Hopskin was released on parole. (*Id*).

On October 7, 2015, Hopskin was arrested on federal drug charges in the Western District of Michigan. On July 26, 2016, as a result of the new charges, the United States Probation Office in this District petitioned to revoke Hopskin's supervised release related to his 1999 conviction. (Doc. 44). The petition alleged that, upon his release from imprisonment on December 5, 2012, Hopskin "failed to report to a United States Probation Office for supervision as directed" and, independently, had committed "another federal, state, or local crime." (*Id.*). Hopskin was arrested on October 25, 2016. (Doc. 48).

Before his arrest and transport to this District, Hopskin pleaded guilty in the Western District of Michigan to possessing cocaine with the intent to distribute. (Doc. 61). He was sentenced to 144 months' imprisonment. (*Id.*). Once in New Mexico before this Court, Hopskin admitted violating the terms of his supervised release as stated in the petition. (Doc. 71-1). The Court revoked Hopskin's supervised release and sentenced him to twelve month's incarceration, six months of which will run consecutively to his 144-month sentence in the Western District of Michigan. (Doc. 58). Hopskin filed the instant motion for relief under Section 2255 on December 21, 2017. (Doc. 61).

## STANDARD

Section 2255 permits a federal inmate to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution and laws of the United States[.]" 28 U.S.C. § 2255(a). If the inmate shows "the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," the Court shall "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*, § 2255(b). In reviewing a Section 2255 motion, the Court presumes that the prior proceedings were lawful. *See Klein v. United State*s, 880 F.2d 250, 253 (10th Cir. 1989). The movant bears the burden of demonstrating the deprivation of a constitutional right. *See United States v. Kennedy*, 225 F.3d 1187, 1197 n.6 (10th Cir. 2000).

## DISCUSSION

Hopskin argues his attorney provided constitutionally deficient assistance because counsel failed to: (1) lodge a jurisdictional challenge given that his 1999 sentence had expired; and (2) appeal the revocation of his supervised release. To prevail, Hopskin must carry the twin burden of establishing that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Prejudice" in this context requires Hopskin to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court must presume "[s]trategic or tactical decisions on the part of counsel are . . . correct, unless they were completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (quotation and citation omitted).

While Hopskin's first contention lacks merits, his second requires and evidentiary hearing to resolve a fact question.

### **Failure to Lodge Jurisdictional Challenge**

A lawyer is not ineffective under *Strickland* for failing to advance a meritless argument. *Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial). Here, Hopskin's jurisdictional theory amounts to just that. Under federal law, a sentencing court retains jurisdiction to revoke a term of supervised release and to order the defendant to serve a term of imprisonment "for any period reasonably necessary for the adjudication of matters arising before [the] expiration [of the term of supervised release] if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." 18 U.S.C. § 3583(h), (i). A term of supervised release, "commences on the day the [prisoner] is released from imprisonment," but, as is relevant here, "does not run during any period in which the person is imprisoned in connection with a conviction for a . . . State . . .crime[.]" 18 U.S.C. § 3624(e).

Here, Hopskin acknowledges he was continually imprisoned on a either a federal or state conviction from March 2000 until December 5, 2012. (Doc. 61). As a result, Hopskin's supervised release did not commence until December 5, 2012. At that point, authorities had until December 5, 2016 to obtain a warrant or summons to revoke his supervised release. *See* 18 U.S.C. §§ 3583; 3624(e). This Court issued a warrant as requested by the USPO on August 15, 2016, before Hopskin's sentence expired. (Doc. 46). Consequently, the Court had jurisdiction to revoke Hopskin's supervised release related to his 1999 drug conviction and Hopskin's attorney was not obligated to raise a meritless argument to the contrary.

4

Nonetheless, Hopskin claims that the government waived jurisdiction. According to Hopskin, the United States Marshall service was required to lodge a detainer while he was in state custody and the USPO's failure to assume dual supervision in 2012 when the Michigan Department of Corrections paroled him offends due process. The Court understands Hopskin's argument to be that his attorney should have raised this due-process theory because of the three-plus year delay it took the government to seek revocation. But as above, this contention lacks merit, and Hopskin's attorney was not required to advance it.

Even assuming such a waiver doctrine applies in the Tenth Circuit and where an inmate, by breaking the law, remained continually imprisoned for over a decade, government "conduct that merely evidences a lack of eager pursuit or even arguable lack of interest" does not constitute waiver. *Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir. 1973). Instead, the government's action must be "so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction." *Id.* (citation and internal quotations omitted). Hopskin has made no showing of grossly negligent behavior here and has therefore has not established entitlement to relief under Section 2255.

## **Failure to Appeal**

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470 477 (2000). Thus, a defendant who shows that his counsel failed to file a notice of appeal despite specific instructions to do so satisfies the deficient-performance prong of *Strickland*. Moreover, "if counsel does not file a requested appeal, a defendant is entitled to [a new] appeal without a

showing that his appeal likely would have had merit." *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005) (quotations omitted).

Hopskin's attorney did not file an appeal. In his sworn motion, Hopskin says he directed his lawyer to do so. (Doc. 61). In an affidavit submitted by his lawyer at the time, the lawyer avers "no recollection of being asked by Mr. Hopskin to file an appeal of this sentence," and does not have "correspondence instructing [the lawyer] to do the same" or any "requests for a status update on any pending appeal." (Doc. 71-2). A fact issue therefore exists as to whether Hopskin directed his attorney to appeal. The Court is obligated to hold an evidentiary hearing to resolve the competing inferences. *See* 28 U.S.C. § 2255(b) (requiring an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

## CONCLUSION & RECOMMENDATION

For the reasons above, Hopskin has not demonstrated his attorney was ineffective for failing to challenge the revocation of his supervised release on jurisdictional grounds. An evidentiary hearing is necessary, however, to determine whether Hopskin directed his attorney to appeal the revocation and resulting sentence.

**IT IS, THEREFORE, RECOMMENDED** that Hopskin's motion under Section 2255 be **DENIED** as it relates to the first ground for relief, counsel be **APPOINTED** for Hopskin, and an evidentiary hearing be **HELD** before the undersigned on the sole issue of whether Hopskin directed his attorney to file and appeal.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION. IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED. PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**