IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

                                              Nos.   1:17-cv-01255-MV-KRS

v.                                                       1:99-cr-00571-MV-KRS-1

KEITH HOPSKIN,

    Defendant/Movant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Defendant/Movant Keith Hopskin's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (CR Doc. 61). The Honorable Martha Vázquez referred this case to the undersigned to recommend to the Court an ultimate disposition. (CR Doc. 65). On May 20, 2021, the Court held a hearing on the remaining issue in this case, at which Mr. Hopskin was represented by counsel and was present and testified via Zoom. Having considered the submissions of the parties, relevant law, and the evidence and witness testimony presented at the May 20, 2021 hearing, the Court recommends that Mr. Hopskin's Section 2255 Motion be denied.

**I.    Background**

On October 18, 1999, Mr. Hopskin pled guilty in this Court to a single-count indictment charging him with possession with intent to distribute 500 grams of cocaine. *See* 21 U.S.C. § 841(b)(1)(B); (CR Docs. 30 and 31). He was sentenced to thirty months in federal prison and a four-year term of supervised release "upon release from imprisonment." (CR Doc. 38). Mr. Hopskin commenced his sentence on March 13, 2000. (CR Doc. 61) at 4.

While serving this sentence, Mr. Hopskin was extradited to Kent County, Michigan on a charge of second-degree murder. He pled guilty and was sentenced in August 2001 to between twelve and thirty-seven years. *Id.* Mr. Hopskin states that he received a discharge notice from the Federal Bureau of Prisons during his time at the Kent County jail. *Id.* In September 2001, Mr. Hopskin began his sentence on the state conviction, and on December 5, 2012 he was released on parole. *Id.* at 14.

On October 7, 2015, Mr. Hopskin was arrested on federal drug charges in the Western District of Michigan. *Id.* On July 26, 2016, as a result of these new charges, the United States Probation Office in this District petitioned to revoke Mr. Hopskin's supervised release related to his 1999 conviction. (CR Doc. 44). The petition alleged that, upon his release from imprisonment on December 5, 2012, Mr. Hopskin "failed to report to a United States Probation Office for supervision as directed" and, independently, had committed "another federal, state, or local crime." *Id.* Mr. Hopskin was arrested on October 25, 2016. (CR Doc. 48).

Before his arrest and transport to this District, Mr. Hopskin pled guilty in the Western District of Michigan to possessing cocaine with the intent to distribute. (CR Doc. 61). He was sentenced to 144 months imprisonment. *Id.* On January 12, 2017, a hearing was held in this Court on the issue of Mr. Hopskin's failure to comply with the conditions of his supervised release. (CR Doc. 71-1) (transcript of revocation of supervised release proceedings). Mr. Hopskin admitted violating the terms of his supervised release as stated in the probation office's petition. *Id.* at 5. On January 19, 2017, the Court sentenced Mr.

Hopskin to twelve months incarceration, six months of which will run consecutively to his 144-month sentence in the Western District of Michigan. (CR Doc. 58).

On December 21, 2017, Mr. Hopskin filed a Section 2255 Motion seeking review of the judgment revoking his supervised release. (CR Doc. 61). Mr. Hopskin raised two ineffective assistance of counsel claims against his former counsel, John Butcher: (1) that his counsel was ineffective for not raising a jurisdictional challenge; and (2) that his counsel was ineffective for failing to file an appeal of the judgment. *Id.* On September 4, 2019, the Court entered a Proposed Findings and Recommended Disposition ("PFRD") recommending the Section 2255 Motion be denied as to the first allegation of ineffective assistance, Mr. Hopskin be appointed counsel, and an evidentiary hearing be held as to the second claim for relief. (CR Doc. 72). On January 22, 2021, the presiding judge adopted the PFRD, denied Mr. Hopskin's first claim that his attorney was ineffective for failing to raise a jurisdictional challenge, and ordered counsel be appointed and an evidentiary hearing be conducted regarding the remaining claim regarding counsel's failure to file an appeal. (CV Doc. 10). Mr. Hopskin was appointed counsel and, on May 20, 2021, the Court held an evidentiary hearing. (CV Docs. 18, 19). At the hearing, both Mr. Hopskin and his former attorney testified via Zoom. (CV Doc. 19).

## II.     Legal Standard

Section 2255 permits a federal inmate to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution and laws of the United States[.]" 28 U.S.C. § 2255(a). If the inmate shows "the sentence imposed was not authorized by law or is otherwise open to

3

collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," the Court shall "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). In reviewing a Section 2255 motion, the Court presumes that the prior proceedings were lawful and the movant bears the burden of demonstrating the deprivation of a constitutional right. *See United States v. Kennedy*, 225 F.3d 1187, 1197 n.6 (10th Cir. 2000); *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989).

To prevail on an ineffective assistance of counsel claim, a movant must establish that: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Thus, a movant who shows that his counsel failed to file a notice of appeal despite specific instructions to do so satisfies the deficient-performance prong of *Strickland*. Moreover, "if counsel does not file a requested appeal, a defendant is entitled to [a new] appeal without a showing that his appeal likely would have had merit." *United States v. Garrett*, 402 F.3d 1262, 1265 (10th Cir. 2005).

In addition, counsel has a duty to consult with clients about filing an appeal if "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably

demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. To comply with this duty to consult, counsel must "advis[e] the defendant about the advantages and disadvantages of taking an appeal" and "mak[e] a reasonable effort to discover the defendant's wishes." *Id.* at 478. To determine whether a rational defendant would want to appeal, courts must take into account the "totality of the circumstances," including "whether the conviction follows a trial or guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* at 480. Courts should also consider "whether the defendant received the sentence bargained for as part of the plea" and "whether the plea expressly reserved or waived some or all appeal rights." *Id.*

### III. Discussion

Mr. Hopskin's attorney did not file an appeal of his January 19, 2017 sentence. At the May 20, 2021 evidentiary hearing, Mr. Hopskin testified that at his January 12, 2017 revocation hearing, the judge informed him of his right to appeal and he understood those rights. (CV Doc. 19) at 50 (transcript of May 20, 2021 hearing); (CR Doc. 71-1) at 10-11 (transcript of January 12, 2017 hearing). Mr. Hopskin testified that after the revocation hearing he told Mr. Butcher that he wanted to appeal. (CV Doc. 19) at 41-42 ("And I said something like – like I want to appeal it because I didn't think it was fair what they did."). Mr. Hopskin did not recall what Mr. Butcher said in response, nor did he recall whether the conversation took place in the courtroom or elsewhere. *Id.* at 42, 45-46. He further testified that he did not have any follow-up with Mr. Butcher after the January 12, 2017 hearing. *Id.* at 43-45.

Mr. Butcher testified that Mr. Hopskin believed his supervised release should have run while he was incarcerated in another state and was upset about the 12-month sentence for the violation. (CV Doc. 19) at 9-10. Nevertheless, Mr. Butcher explained to Mr. Hopskin that supervised release is tolled if a person spends more than three days in jail, and the law on that point "is clear." *Id.* at 10. Mr. Butcher had no memory of Mr. Hopskin asking him to appeal the 12-month sentence, and he stated that if Mr. Hopskin had asked for an appeal, he would have filed one. *Id.* at 10-11 ("I have no recollection of him asking for an appeal and I don't have any correspondence that he said what's going on with it."). Mr. Butcher further testified that even though he thought an appeal would not have been successful, he would have filed one if Mr. Hopskin had asked him to. *Id.* at 11-12 ("[T]he fact that I thought it was a losing appeal would not stop me. I mean, most of my appeals are losing appeals."). Additionally, Mr. Butcher provided a letter he sent to Mr. Hopskin dated January 25, 2017, which explained that Mr. Hopskin had fourteen days from the date of the judgment to file an appeal and stated that Mr. Butcher saw no issue to appeal because Mr. Hopskin received a sentence within the applicable guideline range. (CV Doc. 18-1). The letter instructed Mr. Hopskin to call Mr. Butcher if he had questions concerning his right to appeal and included a toll-free number. *Id.*

The Court finds Mr. Butcher's version of events more credible for several reasons. Mr. Hopskin could not recall the details of where he was when he asked Mr. Butcher to file an appeal or what Mr. Butcher's response was. In contrast, Mr. Butcher provided detailed testimony about his practice when a client asks to file an appeal, such as when that issue is normally discussed and how it is calendared. (CV Doc. 19) at 15-19. Mr. Butcher explained that even though Mr. Hopskin was upset about the sentence he received for the supervised

6

release violation, that did not lead to him asking to file an appeal. *Id.* at 19. He stated that was not unusual, as other clients have been upset with the outcomes of their cases and did not want to appeal. *See id.* ("[E]specially on Supervised Release violations, … it's very rarely that they appeal even though they're not happy with the results."). Mr. Butcher also stated it was not unusual that he did not follow up with Mr. Hopskin about an appeal, other than sending the letter, since Mr. Hopskin admitted to the violation and effectively received a sentence of half the advisory guideline range. *Id.* at 20.

The January 25, 2017 letter from Mr. Butcher to Mr. Hopskin further supports a finding that Mr. Hopskin did not ask to file an appeal. While Mr. Hopskin testified that he never received the letter (*see* CV Doc. 19 at 43), the existence of the letter nevertheless indicates that Mr. Hopskin did not request an appeal because Mr. Butcher "would not have sent this letter out in this form if [Mr. Hopskin] had told me he wanted to appeal." *Id.* at 32. Instead, Mr. Butcher stated he would have "put something in the letter acknowledging that we were going to appeal per instructions." *Id.* As such, the letter indicates that Mr. Butcher was not asked to file an appeal. *Id.* ("So at the time that this letter went out, I would have not had any indication that he wanted to appeal or that he had told me he wanted an appeal."). Additionally, Mr. Hopskin's lack of inquiry into the status of the appeal supports a finding that the request was not communicated to Mr. Butcher. *See id.* at 36, 47.

Based on the foregoing, the Court finds that Mr. Hopskin did not adequately communicate a request for an appeal to Mr. Butcher. *See Flores-Ortega*, 528 U.S. at 477 (explaining that a request for an appeal must be made with "specific" or "express" instructions). The Court further finds that Mr. Butcher was not ineffective in his duty to

7

consult about filing an appeal because the January 25, 2017 letter adequately advised Mr. Hopskin about the likely success of an appeal and provided a method for Mr. Hopskin to alert Mr. Butcher if he wished to appeal.  Even if this letter is not sufficient to satisfy a duty to consult, the Court finds Mr. Butcher was not required to consult with Mr. Hopskin about filing an appeal because Mr. Hopskin's sentence was pursuant to an admission of violating the terms of his supervised release, there were no nonfrivolous grounds for appeal, and Mr. Hopskin did not reasonably demonstrate that he was interested in appealing.  Therefore, the Court finds that Mr. Butcher's performance was not ineffective.  *See Flores-Ortega*, 528 U.S. at 480 (explaining an attorney's performance is not deficient where there is no reason "to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing," and relevant factors include "whether the conviction follows a trial or guilty plea").

### IV.   Conclusion

For the foregoing reasons, the Court finds that Mr. Hopskin has failed to prove that his attorney was ineffective for failing to file an appeal.  Accordingly, the Court recommends that Mr. Hopskin's remaining claim be denied.

**IT IS THEREFORE RECOMMENDED** that the remaining claim in Mr. Hopskin's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (CR Doc. 61), be **DENIED** and this case be **DISMISSED with prejudice**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE


**WITHIN FOURTEEN (14) DAYS AFTER A PARTY IS SERVED WITH A COPY OF THESE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, THAT PARTY MAY, PURSUANT TO 28 U.S.C. § 636(B)(1), FILE WRITTEN OBJECTIONS TO SUCH PROPOSED FINDINGS AND RECOMMENDED DISPOSITION.  A PARTY MUST FILE ANY OBJECTIONS WITH THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO WITHIN THE FOURTEEN (14) DAY PERIOD ALLOWED IF THAT PARTY WANTS TO HAVE APPELLATE REVIEW OF THE PROPOSED FINDINGS AND RECOMMENDED DISPOSITION.  IF NO OBJECTIONS ARE FILED, NO APPELLATE REVIEW WILL BE ALLOWED.  PURSUANT TO FED. R. CIV. P. 72(B)(2), A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE OBJECTIONS.**